# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 17, 2025

Lyle W. Cayce
Clerk

———————————

No. 22-20149

———————————

JSW Steel (USA) Incorporated; JSW Steel USA Ohio,
Incorporated,

*Plaintiffs—Appellants*,

*versus*

Nucor Corporation; United States Steel Corporation;
AK Steel Corporation,

*Defendants—Appellees*.

——————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1842

——————————————————————————————

Before Stewart, Dennis, and Southwick, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs-Appellants JSW Steel (USA), Inc. and JSW Steel USA
Ohio, Inc. (collectively, "JSW") appeal the district court's dismissal of their
federal and state antitrust claims against Defendants-Appellees AK Steel

———————————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20149

Holding Corp. ("AK Steel"), United States Steel Corp. ("U.S. Steel"), and Nucor Corp. ("Nucor"). For the following reasons, we AFFIRM.

I

JSW manufacturers steel products using semi-finished steel slab that it purchases from steel producers.[1] JSW's purchased steel slab must meet certain technical specifications, and JSW cannot accept any variance from those specifications. Appellees and Cleveland-Cliffs Inc.[2] are producers of steel slab and collectively maintain an overwhelming majority of domestic steelmaking capacity. AK Steel, U.S. Steel, and Cleveland-Cliffs sell steel slab to customers like JSW, but Nucor does not; instead, it consumes its slab internally. Moreover, Appellees and Cleveland-Cliffs compete with JSW as manufacturers of steel products.

JSW historically relied on imports from foreign steel producers to source steel slab to manufacture its products. In March 2018, however, then-President Trump issued a Proclamation levying a 25% tariff on most steel imports and imposing import quotas from certain countries exempt from the tariff. *See* Procl. of Mar. 8, 2018, 83 Fed. Reg. 11625 (Mar. 15, 2018). The U.S. Department of Commerce authorized its Bureau of Industry and Security ("BIS") to grant tariff exclusions to U.S. importers for steel products the BIS determined were not domestically available in sufficient quantity and quality. 15 C.F.R. Pt. 705, Supp. 1 (c)(6). Other companies were permitted to file objections to exemption requests if the objector could demonstrate that the requester could obtain the steel product from a

---

[1] The facts recounted are those alleged in the complaint. *See Neiman v. Bulmahn*, 854 F.3d 741, 746 (5th Cir. 2017).

[2] Although a defendant in the underlying suit, JSW does not appeal the dismissal of its claims against Cleveland-Cliffs Inc.

domestic source, in sufficient quantity, within eight weeks. The relevant regulations do not require objectors to demonstrate that the steel product available domestically "be identical," only that it "be equivalent as a substitute product." 15 C.F.R. Pt. 705, Supp. 1 ¶ (c)(6)(ii). After consideration of any objections and rebuttals, the BIS determines whether to grant or deny the request. *Id.* at ¶¶ (d), (f), (g).

At a very high level, JSW's theory of the case is as follows. Appellees conspired to boycott JSW by refusing to supply it with specific, domestically produced steel slab. To accomplish this conspiracy, Appellees met at various times to organize a plot to exploit the tariff exclusion process. The scheme began with Appellees near-simultaneous and parallel statements to the BIS (in response to JSW's exclusion requests) that AK Steel and U.S. Steel were willing and capable of producing and selling domestic steel slab that met JSW's needs. As a result, JSW's exclusion requests were denied, and it was forced to purchase domestic steel slab from Appellees. But AK Steel and U.S. Steel refused to supply the steel slab both claimed they could in statements to the BIS. With JSW unable to source steel slab to produce competing steel products, Appellees further entrenched their market positions. Thus, the exclusion process was central to Appellees' purported conspiracy.

Now, we turn to JSW's specific allegations of a conspiracy. JSW alleges that executives and other representatives for Appellees met frequently at government and industry trade group events shortly before and long after the Trump tariffs went into effect to organize their scheme to exploit the exclusion process to their benefit.[3] Amid their meetings,

---

[3] JSW's complaint acknowledges a lack of "details on what was discussed at each of [Appellees'] numerous meetings," but that a conspiracy can nonetheless be inferred for three reasons: (1) "the frequency and timing of such meetings;" (2) a statement of a Nucor representative in 2018 that it and U.S. Steel were "working together" in discussing

Appellees filed thousands of substantively parallel and near-simultaneous objections to foreign tariff exemption requests filed by JSW and others with the BIS. JSW's complaint makes much of Appellees' objections to a series of exclusion requests for steel slab imports filed by JSW in May 2018. There, Appellees uniformly claimed that JSW's sought-after slab was domestically available from AK Steel and U.S. Steel. JSW's rebuttal argued that AK Steel and U.S. Steel could not produce slabs to the technical specifications or quantity that JSW requested. Nucor and U.S. Steel responded by pointing to the domestic availability of the specified slabs and acceptable substitute products. In April and May 2019, BIS denied JSW's exclusion requests, concluding that the requested steel slab "[wa]s produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality" and "that no overriding national security concerns require[d] that th[e] exclusion request be granted."

Naturally, JSW then simultaneously approached AK Steel and U.S. Steel with "firm inquiries" to purchase steel slab. AK Steel requested that JSW establish its creditworthiness as a precondition to any transaction by providing either financial statements or a standby letter of credit. JSW declined, offering instead to supply a documentary letter of credit. Despite that refusal, AK Steel offered to sell slab to JSW pending acceptance of certain technical exceptions and the submission of a standby letter of credit from a U.S. bank. JSW ended the discussions because "the exception sheet [listing technical deviations] ran contrary to AK Steel's certified statements that it 'has the ability to produce' the products subject to JSW's exemption requests—including to the sizes and exacting chemistries that JSW

_____

"possible changes to the steel Section 232 exclusion process;" and (3) Appellees' "repeated conduct against their admitted self-interest."

required." Likewise, U.S. Steel requested evidence of JSW's creditworthiness. JSW never provided the information, nor does it allege that it attempted to comply with the request. Nevertheless, U.S. Steel reviewed JSW's order but explained it could process a portion of the order "with a 3 month lead time" and another portion after the completion of a construction project approximately eighteen months later. The entire order also would be subject to certain technical deviations. JSW does not allege it responded to U.S. Steel's proposal. Ultimately, then, U.S. Steel did not provide the slab.

Unsuccessful in its dealings with domestic producers (AK Steel and U.S. Steel), JSW filed dozens of additional tariff exclusion requests in March and April 2021 in another attempt to purchase foreign steel slab. The BIS granted JSW's exclusion requests over Appellees' objections. Despite having secured the exclusions, JSW's previous upward financial trajectory came to a grinding halt. Its slab acquisition and overall manufacturing costs increased dramatically, as it was forced to slow its production and pay more for imported slab.

JSW filed suit against U.S. Steel, AK Steel, Nucor, and Cleveland-Cliffs, claiming violations of the (1) Sherman Act § 1 and Clayton Act § 4; (2) the Texas Free Enterprise and Antitrust Act, Tex. Bus. & Com. Code Ann. § 15.01 *et seq.*; (3) civil conspiracy in violation of Texas state law; (4) tortious interference with existing contracts; and (5) tortious interference with prospective business relationships. On Appellees' motions under Federal Rule of Civil Procedure 12(b)(6), the district court dismissed JSW's Sherman Act and associated Clayton Act claims with prejudice under three independent grounds: (1) JSW had failed to plausibly allege that the defendants had formed a conspiracy in violation of the Sherman Act; (2) JSW

No. 22-20149

claims against the defendants were barred by the *Noerr-Pennington*[4] doctrine; and (3) JSW failed to allege a cognizable antitrust injury. Finally, because JSW's state law claims rose and fell with JSW's Sherman Act claim, the district court concluded they also had to be dismissed. JSW timely appealed.

## II

We review a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo, applying the same standard applied by the district court. *Masel v. Villarreal*, 924 F.3d 734, 742–43 (5th Cir. 2019). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Moffett v. Bryant*, 751 F.3d 228, 238–39 (5th Cir. 2014) (internal quotation marks and citation omitted).

## III

JSW's appeal turns on the dismissal of its Sherman Act claim, which rested primarily on two conclusions by the district court. First, the district court's conclusion that JSW failed to sufficiently plead a Sherman Act claim because nearly all the conduct alleged in the complaint is protected by the *Noerr-Pennington* doctrine. And second, the district court's conclusion that JSW failed to plausibly allege that AK Steel, U.S. Steel, or Nucor entered into a conspiratorial agreement in violation of Section 1 of the Sherman Act. We address each of the district court's conclusions in turn.

---

[4] *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers Am. v. Pennington*, 381 U.S. 657 (1965).

No. 22-20149

A

In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965), the Supreme Court established that "[t]he federal antitrust laws . . . do not regulate the conduct of private individuals in seeking anticompetitive action from the government." *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 379–80 (1991). "The essence of the [*Noerre-Pennington*] doctrine is that parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988).

In light of these precepts, the district court concluded that much of JSW's Sherman Act claim rests upon Appellees' petitioning conduct protected under *Noerr-Pennington*. According to JSW, the conspiratorial "parallelism between AK Steel and U.S. Steel's conduct . . . began with petitioning conduct," *i.e.* their "lockstep certifications" to the BIS that both had the means and motive to supply specific steel slab to JSW in response to JSW's exclusion requests. The same is true of Nucor—the supposed ringleader of the conspiracy—who JSW alleges also "acted in lockstep" with AK Steel and U.S. Steel by filing substantively similar objections to JSW's exclusion requests before the BIS. Moreover, JSW's complaint stresses that Nucor and U.S. Steel admitted to "working together" in an email to support the plausibility of the conspiracy among Appellees. But the district court concluded, as evidenced from the email itself, which is included in the complaint, Nucor and U.S. Steel were "working together" to discuss "possible changes to the steel Section 232 exclusion process" with the Department of Commerce. In other words, Nucor and U.S. Steel coordinated their petitioning conduct with the Department of Commerce,

which the district court found cannot form the basis of an antitrust conspiracy. *See, e.g.*, *Omni Outdoor Adver., Inc.*, 499 U.S. at 379–80; *Video Int'l Prod., Inc.*, 858 F.2d at 1082.

JSW concedes that Appellees' certifications to the BIS cannot form the basis of antitrust liability. We agree with that assessment. Nevertheless, JSW argues for the first time on appeal that we may consider protected petitioning conduct as context for AK Steel and U.S. Steel's later refusals to deal to establish the plausibility of Appellees' antitrust conspiracy. But JSW, in its complaint, did not plead that U.S. Steel and A.K. Steel's petitioning conduct could be used to provide context for non-petitioning conduct or to show the purpose and character of the challenged refusal to deal. Nor did JSW make such an argument in opposition to the motion to dismiss filed by U.S. Steel and A.K. Steel. Having not raised this argument in the district court, JSW forfeited it on appeal. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal."). Given these particular circumstances, we have been presented with no basis to fault this part of the district court's analysis.

B

JSW's remaining allegations concern its post-petition dealings with AK Steel and U.S. Steel. We conclude these allegations are insufficient to support a plausible claim for relief under the Sherman Act.

To plead a claim for relief under Section 1 of the Sherman Act, a plaintiff must allege that the defendants "(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015) (internal quotation marks omitted). "Only a concerted refusal to deal is illegal; a manufacturer

'generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently.'" *Id.* at 843 (quoting *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 761 (1984)). To determine whether JSW has alleged a conspiracy, then, the primary inquiry "is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553 (internal quotation marks omitted). "[W]hen allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* at 557.

After submitting simultaneous "firm inquiries" to AK Steel and U.S. Steel in May 2019, JSW alleges that both engaged in parallel refusals to deal by erecting similar creditworthiness requirements and by seeking significant deviations from JSW's requested steel chemistries and sizes, which JSW maintains were pretextual and based on a conspiracy. Regarding the creditworthiness requirements, JSW offers the conclusory allegation that this was a pretextual bar to create a "financial basis on which to reject JSW's business when, in reality, [their] refusal to sell domestic slabs to JSW resulted from [the] conspiratorial agreement with the other [Appellees]." But there is no allegation that AK Steel or U.S. Steel singled out JSW in requiring proof of creditworthiness as a condition for the sale of steel slab, nor does JSW allege it was otherwise creditworthy. And despite JSW declining to supply the requested creditworthiness documents, AK Steel and U.S. Steel substantively responded to JSW's slab order inquiry with exception sheets, comments, and deviation lists. In addition, JSW makes much of its allegation that AK Steel and U.S. Steel imposed a creditworthiness requirement "for the first time ever . . . as a condition of engagement," but JSW's complaint does not allege that it had previously purchased steel from either. To the contrary, JSW alleges that it imported steel slab from foreign producers prior

to the 2018 tariffs. Given that JSW sought to purchase 30,000 tons of steel slab from AK Steel and U.S. Steel, their similar requests for proof of creditworthiness as a precondition to the sale "could just as well be independent action," rendering JSW's conspiratorial inference unreasonable. *See Twombly*, 550 U.S. at 557.

JSW's reliance on AK Steel and U.S. Steel's technical deviations from the requested steel to establish a concerted effort to boycott JSW fares no better. JSW vigorously rebutted AK Steel and U.S. Steel's objections to its exclusion requests on the basis that neither could produce the specific steel slab JSW requested.[5] For example, JSW pointed to AK Steel's claim that it could supply an acceptable substitute steel slab product, which JSW argued did not meet the dimensional or chemical specifications for JSW's requested steel. The same is true of U.S. Steel, which JSW argued could not timely produce the specific quality of steel JSW requested. These deviations are consistent with what was presented to JSW in its later dealings with AK Steel and U.S. Steel. As such, JSW's conspiratorial inference on this basis is unreasonable. *See id.* At bottom, JSW's allegations of AK Steel and U.S. Steel's parallel dealings are insufficient to support a plausible claim for relief under the Sherman Act.[6]

---

[5] JSW's rebuttals to AK Steel and U.S. Steel's objections to JSW's exclusion requests were attached to Appellees' motion to dismiss. On appeal from a motion to dismiss, our "review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Further, when there is a conflict between allegations in a pleading and exhibits, it is well-settled that the exhibits control. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

[6] Because we find that JSW failed to state a claim under the Sherman Act, we do not address Appellees' alternative argument that JSW failed to claim a valid antitrust injury.

No. 22-20149

## IV

For the foregoing reasons, we AFFIRM the district court's judgment.